UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| CHRISTOPHER A. JOHNSTON, | ) | | |
|---|---|---|---|
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:25-CV-513-TAV-DCP |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | | |
| JUDGE SWORD, DA FITZGERALD, | ) | | |
| LT HOWARD, LT KIDD, LT | ) | | |
| WARRICK, | ) | | |
| CO ESTRADA, AGENT PICKETT, and | ) | | |
| DA WILLARD, | ) | | |
| | ) | | |
| Defendants. | ) | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a prisoner in the custody of the Tennessee Department of Correction ("TDOC") currently housed in the Trousdale Turner Correctional Center, filed (1) a complaint under 42 U.S.C. § 1983 concerning events that transpired in Knox County, Tennessee [Doc. 2], and (2) a motion for leave to proceed *in forma pauperis* [Doc. 1]. For the reasons set forth below, the Court will grant Plaintiff's motion [Doc. 1] and dismiss this action for failure to state a claim.

I. **MOTION TO PROCEED *IN FORMA PAUPERIS***

It appears from Plaintiff's motion and accompanying documents [Doc. 1] that he lacks the financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [Doc. 1] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District

Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902 as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk will be **DIRECTED** to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with the requirements for payment of the filing fee.

## II.     SCREENING OF COMPLAINT

### A.     Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the

relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570.

### B. Plaintiff's Allegations

On February 25, 2024, Plaintiff was arrested and booked into the Knox County Detention Facility ("KCDF") following a traffic stop by Agent Pickett with the Drug Task Force [Doc. 2, p. 6]. Plaintiff was placed in Unit 6, where four inmates entered his cell and stabbed him in the head on February 28, or March 1, 2024 [*Id.*] Plaintiff received nine staples "at medical[,]" but Lieutenant ("Lt.") Howard refused Plaintiff's request to go to the hospital for x-rays [*Id.*]. The inmates who stabbed Plaintiff were criminally charged and "separate housing alerts" were put into place [*Id.*].

Plaintiff had a hearing in March 2024, and his appointed attorney tried to persuade him "to take this big sentence" without investigating the charges against Plaintiff or securing any of the evidence he requested [*Id.* at 7]. The lawyer still had not complied with

3


Plaintiff's requests by the time of the preliminary hearing in May 2024, and District Attorney ("DA") Fitzgerald attempted "to mis[]use her position" [*Id.*].

Plaintiff fired his attorney on May 6, 2024, and Attorney Daniel Bell was appointed to be Plaintiff's counsel [*Id.*]. Attorney Bell "c[a]me[] with" a deal where Plaintiff would plead guilty to contraband in a penal institution and receive a five year sentence [*Id.*].

Plaintiff made bond in May 2024, and voluntarily entered a rehabilitation center in Chattanooga [*Id.*]. After rehab, Plaintiff was accepted into Oasis Halfway House but was "walked off" the property because of an issue he had with staff [*Id.*].

In August 2024, Plaintiff went to criminal court before Judge Sword and was arrested without any charge [*Id.*]. Plaintiff was taken to the KCDF, where he was placed in handcuffs and belly chains [*Id.* at 8]. Plaintiff "laid in [the] floor" for seven days without a mat or blanket [*Id.*]. Lt. Kidd and Lt. Howard held Plaintiff at "tazer point" and forced him to dig in his rectum, stating that they knew Plaintiff had drugs [*Id.*]. Over the next three days, Plaintiff was "administered drugs" and taken to the hospital and x-rayed without a court order [*Id.*]. Plaintiff was then charged with "Class C felon contraband" [*Id.*].

Plaintiff's attorney told him in August 2024, that he would receive a plea deal for a five-year sentence and three-year sentence to run concurrently, but before he accepted that deal, DA Willard "switche[d] it to Class B felon" without bond [*Id.*]. There had not been any investigation, there were no prior drug convictions, and no one "bl[e]w[] the whistle about what [Plaintiff] was put through on camera" [*Id.*].

In September 2024, Plaintiff accepted a plea deal in Judge Sword's court [*Id.*]. Plaintiff agreed to a 12-year sentence to be served at 35 percent just "to get away from this

4

place as fast as possible" [*Id.*]. But a couple of months went by, and Plaintiff was still at the KCDF [*Id.*].

Plaintiff was in 6-C Building at the KCDF when Corrections Officer ("CO") Estrada asked Plaintiff what happened with the four inmates who stabbed Plaintiff in the head, and what would happen if Plaintiff was "placed around the guys" again [*Id.* at 9]. Plaintiff told CO Estrada that there were separate alerts and that he probably would not see them [*Id.*]. But two nights later, Lt. Warrick "and security" had Plaintiff pack to be moved to 1-C Building [*Id.*]. When Plaintiff arrived in 1-C Building, he saw two of the inmates who had stabbed him [*Id.*]. Around lunchtime, the "pod CO" told Plaintiff to pack up to be moved back to 6-C Building, because he was not supposed to be there [*Id.*].

Plaintiff was back in 6-C Building for two days when Lt. Warrick and "security" told him to pack up again [*Id.*]. On the walk to 1-C Building, they made comments to Plaintiff such as, "[i]t will be like last time[.] Watch, he will get it again" [*Id.*]. When Plaintiff entered Cell 210, the Lieutenant said, "I put [a] work order in on your light" and winked at Plaintiff [*Id.*]. Plaintiff was panicked, because he knew what was going on but had "no one to turn to for help" [*Id.*]

At 7:30 a.m., maintenance came into Plaintiff's cell to work on his light [*Id.* at 10]. Plaintiff's door was open, and he saw the inmate who stabbed him tell another inmate that he would get Plaintiff soon [*Id.*]. Plaintiff panicked, and he "g[ot] him" before the inmate could attack Plaintiff [*Id.*]. Plaintiff was charged with aggravated assault and received a "6 year at 100% stack" on his previous sentence [*Id.*].

5

Aggrieved, Plaintiff filed this § 1983 action against the United States of America, DA Willard, Judge Sword, DA Fitzgerlad, Lt. Howard, Lt. Kidd, Lt. Warrick, CO Estrada, and Agent Pickett, asking the Court to vacate his sentences and release him from prison [*Id.* at 10].

## III. ANALYSIS

### A. Unavailable Relief

Plaintiff's complaint fails to state a claim upon which § 1983 relief may be granted for several reasons, the most comprehensive of which is that he cannot seek release from prison in a § 1983 action. The Supreme Court has expressly held "that when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

And, as Plaintiff is currently incarcerated because of the judgments referenced in his complaint, he cannot otherwise seek § 1983 relief related to his convictions unless he can demonstrate that any of those judgments have been reversed or otherwise invalidated. *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (holding plaintiff must demonstrate unlawfulness of his conviction or confinement prior to pursue § 1983 suit challenging criminal judgment). Therefore, Plaintiff seeks relief unavailable in a § 1983 action, and his complaint must be dismissed.

Even though Plaintiff cannot obtain the relief he seeks in this action, the Court nevertheless addresses Plaintiff's claims and finds he has failed to present a colorable § 1983 claim.

### B. Untimely Claims

Many of Plaintiff's claims are time-barred. Tennessee's one-year statute of limitations for personal injury actions is applicable to Plaintiff's § 1983 claims. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Tenn. Code Ann*. § 28-3-104; *Foster v. State*, 150 S.W.3d 166, 168 (Tenn. Ct. App. 2004) (applying the one-year statute of limitations from Tenn. Code Ann. § 28-3-104 in a § 1983 claim). When the statute begins to run is an issue of federal law. *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citations omitted). Under federal law, a cause of action accrues, and the limitations period begins to run, when the injury forming the basis of the claim is discoverable, *see Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991) (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)), or when the cause of action is complete, *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1162 (6th Cir. 2021) (acknowledging that the "standard" rule starting limitations period is "when the plaintiff has a complete and present cause of action").

It is unclear when Plaintiff "filed" this action by submitting it to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266, 273 (1988) (holding pro se prisoner's notice of appeal filed at moment of delivery to prison authorities for forwarding to district court); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002) (holding federal habeas application is deemed filed when handed to prison authorities for mailing). Plaintiff's

7

complaint was signed on August 2, 2025 [*See* Doc. 2, p. 11]. Courts assume, "absent contrary evidence," that a prisoner delivers legal papers to prison authorities for filing "on the date he or she signed it[.]" *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008). Here, contrary evidence demonstrates Plaintiff did not deliver his complaint for filing on August 2, 2025, because court documents dated September 3, 2025, are included in the envelope bearing the complaint [*See id*. at 12–14]. And the complaint was not received by the Court until October 20, 2025 [*Id.* at 15].

But any injuries surrounding Plaintiff's arrest, assault by four inmates at the KCDF, August 2024 criminal court proceedings, and treatment at the KCDF in August 2024 were discoverable and complete when they occurred, which was more than one year prior to Plaintiff filing his complaint in October 2025. Accordingly, these claims are otherwise properly dismissed as untimely. *See In re Royal Manor Mgmt., Inc.*, 652 F. App'x 330, 339–40 (6th Cir. 2016) (noting that "courts have no authority" to modify "statute-of-limitations deadlines").

**C.     Immunities**

Further, Plaintiff cannot sue the United States of America, Judge Sword, DA Willard, or DA Fitzgerald in this action, because these Defendants are immune from suit.

First, the United States cannot be sued without its consent. *Block v. North Dakota*, 461 U.S. 273, 287 (1983) ("The United States cannot be sued at all without the consent of Congress."). And that waiver must be unequivocally expressed. *United States v. Testan*, 424 U.S. 392, 399 (1976). Therefore, sovereign immunity precludes this action against the United States of America.

8

Second, Plaintiff has sued Defendants DA Willard, DA Fitgerald, and Judge Sword in connection with his criminal proceedings. However, both judges and prosecutors are entitled to absolute immunity for activities connected with judicial proceedings. *See Imbler v. Pachtman*, 424 U.S. 409, 410, 431 (1976) (holding "a state prosecuting attorney who act[s] within the scope of his duties in initiating and pursuing a criminal prosecution" is not amenable to suit under § 1983); *Stump v. Sparkman*, 435 U.S. 349, 355–56 (1978) (noting prior rulings establishing judicial immunity in "civil actions for [] judicial acts" within their jurisdiction). Accordingly, these Defendants are immune from suit.

### D. Failure-to-Protect Claim

This leaves Plaintiff's allegations that CO Estrada inquired what would happen if Plaintiff were around the inmates who had previously stabbed him, and that Lt. Warrick moved Plaintiff to 1-C Building knowing of the danger and made a "work order" for Plaintiff's light [Doc. 2, p. 9]. Plaintiff does not disclose the date these events occurred, but the Court will presume, for screening purposes, that the allegations are timely. And liberally construing Plaintiff's complaint, the Court will consider whether these allegations are sufficient to state a plausible failure-to-protect claim against either CO Estrada or Lt. Warrick. In doing so, the Court keeps in mind that to state a claim against any Defendant individually, Plaintiff must adequately plead that each Defendant's own actions has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted).

The Eighth Amendment's prohibition on "cruel and unusual punishment" "places duties" on prison officials. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Those duties require officials to "take reasonable measures to guarantee the safety of" inmates. *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 527 (1984)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Instead, "[f]or a failure-to-protect claim to lie against a prison official, the plaintiff must show that: (1) objectively, he was incarcerated under conditions posing a substantial risk of serious harm; and (2) the official acted with deliberate indifference to inmate safety, meaning the official was subjectively aware of the risk and fail[ed] to take reasonable measures to abate it." *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (citations and quotations omitted) (alteration in original).

Because of the subjective component necessary to establish failure-to-protect liability, an officer cannot be deliberately indifferent when an inmate is a victim of an unforeseeable attack. *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002). Therefore, an officer's negligence or dereliction of duty cannot be the basis of a failure-to-protect claim. *See Daniels v. Williams*, 474 U.S. 327 (1986) (holding negligence does not state § 1983 cause of action).

Here, Plaintiff has not alleged any facts suggesting that CO Estrada had any involvement in the decision to relocate Plaintiff to 1-C Building, and he must be dismissed.

Plaintiff also alleges that Lt. Warrick (1) put Plaintiff in the same building with the inmates who previously assaulted Plaintiff knowing that Plaintiff would "get it again" and

(2) stated he "put [in a] work order on [Plaintiff's] light" and winked at Plaintiff [*See* Doc. 2, p. 9]. However, even if the Court assumes that merely placing Plaintiff in the same building with inmates who had previously assaulted him is an objectively serious risk, and that Lt. Warrick was aware of and disregarded that risk, Plaintiff has not shown a causal link between Lt. Warrick's behavior and his injuries.

"In a failure-to-protect claim, the injury is deliberate exposure to excessive risk of serious harm." *Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679, 685 (6th Cir. 2024). And this requires a plaintiff to "plausibly show a causal connection between the defendant's act or omission and his injury." *Id.* (citing *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 490–91 (6th Cir. 2020)). There is no such well pled connection here, namely because Plaintiff was the cause of his own injuries. Plaintiff alleges that he initiated a physical altercation with another inmate after the maintenance man left Plaintiff's cell door open while repairing a light in Plaintiff's cell [Doc. 2, p. 10]. And "common sense and caselaw confirm that Plaintiff cannot prove a 'failure to protect claim' based on his starting a fight with another inmate." *Chappell v. Woods*, No. 1:17-CV-80, 2019 WL 1305859, at *3 (S.D. Ohio Mar. 22, 2019), *aff'd*, No. 19-3355, 2020 WL 6162996 (6th Cir. June 8, 2020); *see also Clark v. Johnson*, 181 F. App'x 606, 607 (7th Cir. 2006) (affirming grant of summary judgment and holding "prison officials cannot reasonably be required to protect an inmate who intentionally instigates a violent altercation with another prisoner"). Accordingly, Plaintiff has failed to state a colorable failure-to-protect claim, and Lt. Warrick is entitled to be dismissed.

## IV. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

3. The Clerk is **DIRECTED** to mail a copy of this Memorandum Opinion and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

4. Plaintiff's complaint will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, and

5. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

AN APPROPRIATE JUDGMENT ORDER WILL ENTER.

                                      s/ Thomas A. Varlan
                                      UNITED STATES DISTRICT JUDGE